UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CHRISTINE FLOWERS                                          CIVIL ACTION

VERSUS
                                                          NO. 14-1-JJB
G4S SECURE SOLUTIONS (USA) INC.

## RULING ON MOTION FOR SUMMARY JUDGMENT

This case is before the Court on a Motion for Summary Judgment (Doc. 11) brought by defendant G4S Secure Solutions (USA) Inc. (G4S). Plaintiff Christine Flowers (Flowers) filed an opposition (Doc. 14) to which G4S replied (Doc. 18). Oral argument is unnecessary.

## Background

Flowers worked for G4S from January to December of 2012, and they assigned her to work as a security guard on buses traveling between Baton Rouge and New Orleans. Her supervisor was Brandon Gilmore (Gilmore), though when he was absent, Marc Blanchard (Blanchard) supervised Flowers. Around February or March 2012, Flowers complained to Kimberly Horton (Horton), G4S's office manager, and told Horton that Blanchard made her uncomfortable. Flowers' primary complaint was that Blanchard would call her every day as soon as he started work, which she considered "very strange" behavior. After she reported this incident, Flowers did not raise any issues with Blanchard for several months.

In July of 2012, Flowers complained about Blanchard again; this time, she pointed to four text messages that she received from Blanchard about not turning in her timesheets. Blanchard sent these messages in the middle of the night, between midnight and six, and Flowers again said that Blanchard's messages made her uncomfortable. The messages asked Flowers to turn in her time sheets, and Flowers indicated that she felt that Blanchard wanted her to come to work when

1

he would be the only person there. Shortly after these complaints, G4S assigned Blanchard to a different position—for unrelated reasons, they claim—and Flowers no longer had contact with him. In October of 2012, Flowers called a G4S hotline to complain that Horton's response to her complaints about Blanchard was inadequate. Several days later, she filed a complaint with the Louisiana Civil Rights Commission (CRC) and claimed that her hours were reduced because of her reports about Blanchard; Flowers worked roughly sixty-five (65) hours per week after a coworker left, and when G4S hired a replacement, Flowers' hours dropped.

In December of 2012, G4S terminated Flowers. The impetus for her termination, according to G4S, was an expletive-filled rant that Flowers directed at Horton. After this rant, the company tried to conduct an investigation, but Flowers cancelled two meetings due to illness and a vacation, respectively. Flowers did contact Chad Starwalt (Starwalt), regional vice president, to make claims of harassment and unprofessional behavior in the Baton Rouge office. Starwalt met with Flowers in Baton Rouge and, G4S claims, found Flowers statements to be inconsistent and confusing. After speaking with Horton and obtaining her statement, Starwalt terminated Flowers and stated that the reasons were insubordination and unprofessional behavior. Flowers received her right to sue letter and filed suit in October of 2013, alleging both harassment and that she was terminated in retaliation for filing a complaint with the Louisiana Human Rights Commission and Equal Employment Opportunity Commission (EEOC).

**Standard of Review**

A motion for summary judgment should be granted when the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The admissibility of evidence for summary judgment purposes conforms to the rules of admissibility at trial. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (citations omitted). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Whether a fact is material will depend on the substantive law. *Id*. When addressing a summary judgment motion, the court must make reasonable inferences in favor of the non-moving party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). If the movant meets his initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmovant to identify or produce evidence that establishes a genuine dispute of material fact. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

## Analysis

G4S makes several arguments. First, regarding the Title VII claims of sexual harassment and retaliatory firing, they argue that sexual harassment and termination are outside the scope of Flowers' EEOC charge, and as a result, she has not exhausted her administrative remedies. Second, regarding the Louisiana state law claims for sexual harassment and retaliatory firing, G4S argues that Flowers failed to meet the procedural requirements because she did not give G4S written notice thirty days before initiating legal proceedings. Third, G4S argues[1] that there is insufficient evidence to establish a claim for sexual harassment. Fourth, G4S argues that Flowers cannot establish retaliation either for the reduction in hours or for the termination.[2]

---

[1] This is only necessary to evaluate if the Court finds that sexual harassment is within the scope of the charge.
[2] This is, similar to sexual harassment, only reached if the Court finds retaliation based on termination within the scope of the charge.

I.       Scope of the Charge/Failure to Exhaust Administrative Remedies

A suit under Title VII is limited to "the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAP Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). When evaluating the scope of the charge, courts "consider such factors as the alleged basis for the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). The scope of an EEOC charge is construed liberally to protect lay persons who are not well-versed in employment discrimination law. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). G4S argues that because Flowers' charge only references retaliation by reducing her hours, retaliation by termination and sexual harassment are outside the scope of the charge. Further, they note, Flowers filed her charge in October, before she was terminated, and never filed an amended charge. Flowers, however, argues that harassment and termination are within the scope of her charge, claiming that these both "could reasonably grow" out of the charge.

First, with respect to termination, although the charge specifically mentions retaliation, her description is limited to her reduction in hours. As she did not amend her charge, that she filed the charge before her termination also supports finding termination outside the scope of her charge; G4S cannot reasonably expect retaliation for terminating Flowers to grow out of a charge that she filed before she was terminated. Second, sexual harassment is within the scope of the charge. Flowers did not check "sex" on her form (Doc. 14-2 at 1), but her "particulars" paragraph references a "harassment complaint" and another complaint about multiple messages to her personal cell phone at odd hours. This information sufficiently informs G4S that harassment may be a part of the EEOC investigation. Therefore, summary judgment will be

granted in favor of G4S regarding the Title VII retaliation claim as it pertains to terminating Flowers, as that claim is outside the scope of her EEOC charge. However, sexual harassment is within the scope of her charge, and summary judgment, at least on this argument, cannot be granted.

II.     Louisiana State Employment Discrimination Law Procedural Requirements

Before filing suit under Louisiana's employment discrimination law, a plaintiff must give written notice of the complaint to the employer at least thirty days in advance. La. Rev. Stat. Ann. § 23:303(C) (2014). G4S concedes that the EEOC charge satisfies this, but makes another scope of the charge argument in support of its position that the state law claims for sexual harassment and retaliatory firing should be dismissed for failure to meet the procedural requirements. Flowers does not appear to respond to this particular argument.

The issues here are essentially identical to those from the section on Title VII and the scope of the EEOC charge. Therefore, the same outcome is required. Sexual harassment is within the scope of Flowers' EEOC charge, and as G4S concedes that this constitutes written notice, the sexual harassment claim under state law will withstand this challenge. However, because the notice came before the termination and makes no reference to it, like with the Title VII claim, summary judgment in favor of G4S on the state law claim for retaliatory termination will be granted.

III.    Sexual Harassment

Establishing a claim for harassment under Title VII requires showing five elements; Flowers must show that "1) she is a member of a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her membership in a protected class; 4) the harassment affected a term, condition or privilege of her employment; and 5) her employer

knew or should have known of the harassment and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Several factors are relevant to determine if there is a hostile work environment: frequency of the conduct, severity of the conduct, whether the conduct is "physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Id*. Title VII is also not meant to police civility; to meet the standard of harassment, the conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive . . . ." *Onacle v. Sundowner Offshore Servs., Inc.*, 118 S.Ct. 998, 1002–03 (1998). G4S admits that Flowers is in a protected group but contests the remaining four elements. First, as to elements two and four, they argue that "a few text messages" is not sufficiently severe and pervasive because "no reasonable person" would find that objectively offensive to such an extent that it affects the terms and conditions of employment. Second, they argue that Flowers admitted that even she did not feel that the texts were related to her sex. Third, G4S claims it acted promptly to address Flowers' complaints regardless of whether or not they constituted harassment, undercutting element five. Flowers challenges that G4S followed its policy promptly, but her opposition does not appear to address the other arguments.

To maintain her claim, Flowers needs to establish a genuine dispute of material fact as to all five elements. It is unnecessary to analyze every element because she cannot establish a genuine dispute of material fact as to the "severe or pervasive" element. Although several texts in the middle of the night may be annoying and unpleasant, this incident happened once, and the content of the text messages was innocuous; Flowers does not dispute that Blanchard asked for her timesheets in each one. Flowers offers no evidence of additional instances of harassment

except that Blanchard made her uncomfortable by checking with her as soon as he went on the clock and asking about her uniform; however, in her opposition, Flowers does not expound upon these statements from her deposition, and without further clarification, her testimony does not create a genuine dispute of material fact as to whether there was a pattern of offensive and harassing conduct. Flowers even admits that after the first incident, when she complained around February or March, Blanchard did not bother her again until the summer. (Doc. 11-6 at 4–5). These actions do not rise to the level of a "severe or pervasive" pattern of conduct because Flowers failed to connect them to sex/gender and, due to the months-long break between incidents, hardly amount to a pattern at all. Therefore, summary judgment in favor of G4S on Flowers' state[3] and federal claims for employment discrimination due to sexual harassment will be granted.

IV.    Retaliation

In a retaliation claim, the plaintiff must first establish a prima facie case for retaliation, which has three elements: first, the plaintiff must have engaged in protected activity; second, the plaintiff must have suffered an adverse employment action; and third, there must be a causal link between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). If the plaintiff "establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason" for the action. *LeMaire v. Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007). "After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.* at 389. To establish that the employer's reason is a pretext for retaliation, the employee must show "but for" causation; that is, the employee must show that but for their

---

[3] Substantively, Louisiana's state employment discrimination law mirrors federal employment discrimination law,March 31, 2015.so the analysis is the same. *Bustamento v. Tucker*, 607 So.2d 532, 538 n. 6 (La. 1992).

engaging in protected activity, the employer would not have taken the adverse employment action. *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct 2517, 2534 (2013).

A. Reduction in Hours

Flowers' first retaliation claim centers around her reduction in hours after she complained about Blanchard's text messages in July of 2012. Even if Flowers meets her prima facie case, she does not offer sufficient evidence to create a genuine dispute of material fact regarding whether the legitimate, non-discriminatory reason that G4S offers is a pretext. G4S argues that they reduced Flowers' hours because they hired a new employee; according to G4S, Flowers only worked sixty-five hours a week because a former coworker stepped down. Therefore, when they hired a new employee to that position, the new employee took these extra shifts that Flowers had been working. In her opposition, Flowers does not offer any evidence that this was a pretext and does not address this issue all. Consequently, the Court finds that there is no genuine dispute of material fact regarding the retaliation claim based on a reduction in hours, and summary judgment in favor of G4S will be granted.

B. Termination

The Court has already ruled that Flowers' claim for retaliation based on her termination is outside the scope of her EEOC charge and, as a result, she has failed to exhaust her administrative remedies. Therefore, it is unnecessary to undertake the factual analysis.

**<u>Conclusion</u>**

For the foregoing reasons, the defendant's Motion for Summary Judgment (Doc. 11) is

GRANTED.

Signed in Baton Rouge, Louisiana, on March 31, 2015.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**